UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                        Plaintiff,

                v.

ISRAEL NEGRIEL,

                        Defendant.

_____

**DECISION AND ORDER**

6:22-cv-06514 EAW

On Saturday, November 19, 2022, plaintiff United States of America (the "government") filed an emergency, *ex parte* motion for a temporary restraining order ("TRO") (Dkt. 2) to allow medical examination and hydration and feeding of defendant Israel Negriel ("Defendant"), a native and citizen of Haiti who is detained at the Buffalo Federal Detention Facility (the "BFDF"). (Dkt. 2). In connection with that emergency, *ex parte* motion, the government filed a sworn declaration by Dr. Carlos M. Quinones-Ortiz ("Dr. Quinones") in which he stated, among other things, that Defendant had been on a hunger strike for 19 days and had missed 62 meals. (Dkt. 2-1 at ¶ 7). Dr. Quinones further stated that Defendant had "consumed no water or food since he initiated his hunger strike" and that he had "continued to refuse to eat solid food and/or drink nutritional supplements." (*Id*. at ¶¶ 7, 19). The government also filed a sworn declaration by Michael K. Ball, Assistant Field Office Director with the U.S. Department of Homeland Security, similarly stating that "[d]espite repeated efforts to convince [Mr. Negriel] to eat and drink adequate fluids, [he] has failed to cooperate and expressed his commitment to continue the hunger

- 1 -

strike." (Dkt. 2-2 at ¶ 6). The government asked the Court for a TRO "authorizing it to involuntarily examine Defendant, obtain his vital signs, take blood draws for laboratory testing, and, if deemed medically necessary, provide intravenous liquids and feeding as necessary." (Dkt. 2-3 at 10). The government represented to the Court that its immediate intervention was required and without it, Defendant could suffer significant adverse consequences, including possibly death. (Dkt. 3 at ¶ 3; *see also* Dkt. 2-1 at ¶ 16 (Dr. Quinones stating: "It is difficult to predict for how long the human body can survive without food; if an individual does not have adequate fat stores, this time decreases significantly.")). Indeed, it was because of the purportedly urgent nature of the matter that the government contacted the Operations Manager of the Clerk's Office on Saturday morning at 7:44 a.m. to request that a judge be assigned and the matter heard over the weekend, and that the Operations Manager immediately involved the undersigned.

The Court, relying on the truthfulness of the sworn declarations submitted by the government, issued a TRO on November 19, 2022, in which it authorized the government to use reasonable force to perform necessary medical testing on Defendant and, if medically required, to provide Defendant with hydration. (Dkt. 4). The Court did not grant the government's request to authorize forced feeding.

The Court subsequently learned[1] that it had been provided with false information in connection with the government's motion for a TRO. In particular, Dr. Quinones' sworn

---

[1] The Court was first advised of the inaccuracies by the government in a letter dated November 21, 2022 (*see* Dkt. 9), although the extent of the inaccuracies was not fully disclosed until further information was provided by the government as directed by the Court (*see* Dkt. 12; Dkt. 13).

statements that Defendant had consumed no food or water since initiating his hunger strike and that he had continuously refused to eat solid food or drink nutritional supplements were false. Similarly, Mr. Ball's sworn statements that Defendant was refusing to eat were false. Records maintained by the BFDF indicate that on November 15, 2022—four days before the government filed its emergency application—Defendant consumed two slices of bread, two servings of peanut butter, potato chips, an apple, an orange drink, and a Boost nutritional supplement. (Dkt. 17-1 at 9-10). On November 16, 2022, Defendant consumed a "snack bag," orange juice, a doughnut, an orange, and two Boost nutritional supplements. (*Id*. at 5-7). On November 17, 2022, Defendant consumed an orange, potato chips, a turkey sandwich, and a Boost nutritional supplement. (*Id*. at 3-4). And on November 18, 2022— the day before the government filed its emergency application—Defendant consumed chicken, an orange, and two Boost nutritional supplements. (*Id*. at 1-2). In other words, the government's own records show that in the days leading up to its submission of the TRO application, Defendant was consistently consuming solid food and nutritional supplements.

Despite the fact that Defendant is represented by counsel in connection with the immigration proceedings that have resulted in his detention, the government did not advise Defendant's attorney prior to filing its emergency TRO application. Indeed, the Assistant United States Attorney ("AUSA") representing the government was not even aware that Defendant had immigration counsel until the Court inquired regarding the same and he sought out additional information.

The Court held a hearing on November 28, 2022, at which it dissolved the TRO.

(Dkt. 12).   The Court further ordered the government to provide it with additional information as to how false information had been presented to it in support of this emergency, *ex parte* TRO application.  (Dkt. 12; Dkt. 13).

On November 29, 2022, the government filed a notice that it was voluntarily dismissing the instant matter.  (Dkt. 14)[2].  The Court held a further hearing on December 2, 2022, where it made clear to the government that notwithstanding the filing of the notice of voluntary dismissal, the Court required additional information regarding the filing of the TRO application.  (*See* Dkt. 18).  The Court held a further hearing on December 20, 2022, at which Lisa Schultz, Deputy Chief Counsel, Immigration and Customs Enforcement, Office of the Principal Legal Advisor, and Carol Bridge, Chief Counsel, Immigration and Customs Enforcement, Office of the Principal Legal Advisor ("OPLA"), were required to appear.  (Dkt. 21).  At that appearance, among other things, Ms. Schultz acknowledged that she was aware prior to the filing of the TRO application that Defendant was no longer refusing all food and beverages, although she was not aware of the extent of his intake.

---

[2]      Because Defendant had filed neither an answer nor a motion for summary judgment, neither his consent nor a Court order was required to effectuate this dismissal.  Fed. R. Civ. P. 41(a)(1)(A)(i).  However, the government's voluntary dismissal of the action did not deprive this Court of the authority to consider collateral matters such as those addressed herein.  *See United States v. L-3 Commc'ns EOTech, Inc., 9*21 F.3d 11, 18 (2d Cir. 2019) (explaining that a voluntary dismissal under Rule 41(a) does not impact "a court's inherent postdismissal authority to consider such collateral matters as the possibility of sanctions"). In any event, the Court deferred directing the closure of this case because of these pending issues, but now directs the Clerk's Office to close the case consistent with the notice filed by the government.

It is well established that government attorneys have a "heightened ethical obligation . . . [to] endeavor to do justice." *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 600 (E.D.N.Y. 2017) (internal quotation marks omitted); *see also Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore . . . is not that it shall win a case, but that justice shall be done."). As another judge in this Circuit has observed, "[g]overnment lawyers wield enormous . . . power. They must exercise it in a way that is fully consistent with their constitutional and ethical obligations. And it is the obligation of the courts to ensure that they do and hold them accountable if they do not." *United States v. Nejad*, 487 F. Supp. 3d 206, 208 (S.D.N.Y. 2020).

Here, the government submitted false statements to the Court in support of a request that it be permitted to invade Defendant's bodily autonomy, without any input from him or his lawyer, thus falling short of living up to these ideals. The Court identifies below what it views as the major failures in this case and the causes thereof.

The Court turns first to the submission of sworn declarations containing false information. It became clear to the Court at the appearance on December 20, 2022, that this entirely unacceptable occurrence was the result of insufficient lawyering by both OPLA and the United States Attorney's Office (the "USAO"), including allowing the drafting of legal documents by individuals untrained in the law, failing to carefully review documents prior to their submission to the Court, overreliance on templates, and acting on an emergent basis without adequate investment of resources. Of course, "[b]y presenting

- 5 -

to the court a pleading, written motion, or other paper—<u>whether by signing, filing, submitting, or later advocating it</u>—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, <u>formed after an inquiry reasonable under the circumstances</u> . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b)(3) (emphasis added).  There can be no question that the inquiry performed in this case was not adequate, and that there was an insufficient basis for the factual representations made to the Court.

The Court does not doubt that government counsel were motivated by a genuine concern for Defendant's welfare, and further is cognizant that the Buffalo, New York region was experiencing an extreme weather event the weekend of November 19, 2022, thereby adding additional stress to the situation.  However, as noted above, attorneys for the United States of America have been entrusted by the public with enormous power.  In return, the public—and the Court—expect that power to be wielded with the utmost care, even under urgent circumstances.

As to the failure to advise Defendant's immigration counsel prior to or upon filing the TRO application, Federal Rule of Civil Procedure 65 carefully circumscribes the circumstances under which a TRO may be issued "without written or oral notice to the adverse party or its attorney," including that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]"  Fed. R. Civ. P. 65(b)(1)(A).  Here, in light of the after-disclosed fact that Defendant had consistently been eating solid food and drinking nutritional supplements in the days leading

up to the filing of the *ex parte* TRO application, it is apparent that standard was not satisfied.   There is accordingly no justification for the failure to provide notice to Defendant's counsel, and information regarding counsel's identity should have been immediately provided to the AUSA and the Court.

It goes without saying that it significantly frustrates the Court's ability to do justice when it cannot rely on the veracity of information supplied to it by government attorneys, who, as explained above, have a heightened ethical duty.   It also undermines the public's confidence in the justice system.   *See Nejad*, 487 F. Supp. 3d at 225 ("With each misstep [by the government], the public faith in the . . . justice system further erodes.").   In this case, the gravity of the government's errors was compounded by the fact that relief was sought on an emergent basis, on a date when the Court was not open to the public, and on an *ex parte* basis.

To be clear, the Court does not find that any attorney engaged in intentional misconduct, nor is it issuing sanctions under Rule 11.   Instead, the Court will take what it views as necessary prophylactic measures to ensure that this situation does not arise again. *See* Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules."); *Gen. Motors Corp. v. City of New York*, 501 F.2d 639, 644 n. 11(2d Cir. 1974) (discussing "the court's inherent power to assure compliance with . . . prophylactic rules of ethical conduct"); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 JMF, 2015 WL 4522778, at *5 (S.D.N.Y. July 24, 2015) ("[P]ursuant to both the Federal Rules

of Civil Procedure and its inherent authority, the Court has discretion to enter prophylactic orders that will protect parties' right to a fair trial.").

It is accordingly hereby ORDERED that prior to seeking an emergency TRO in this District involving an immigration detainee on a hunger strike, OPLA shall ascertain whether said detainee is represented by counsel in connection with his or her immigration proceedings,[3] and shall provide the name and contact information for counsel to the AUSA who will be filing the motion for an emergency TRO, who shall in turn provide said information to the Court; and it is further

ORDERED that Carol Bridge, Chief Counsel, Immigration and Customs Enforcement, Office of the Principal Legal Advisor, shall ensure that all attorneys under her supervision read this Decision and Order, and that within two weeks of the date of this Decision and Order, Ms. Bridge shall file a declaration affirming that this has occurred; and it is further

ORDERED that Trini Ross, United States Attorney for the Western District of New York, shall ensure that all AUSAs under her supervision read this Decision and Order, and that within two weeks of the date of this Decision and Order, Ms. Ross shall file a declaration affirming that this has occurred.

The Court will further circulate this Decision and Order among the judges of this District.

---

[3]     Defendant's counsel has represented that whenever counsel appears for an immigration detainee, a G-28 form is filed with the BFDF, and government counsel has not disputed this.  Thus, the government's own records should readily disclose the identity of any attorney for the detainee.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  December 21, 2022
        Rochester, New York